1
2
3
4
5
6
7
8                        **UNITED STATES DISTRICT COURT**

9                      **CENTRAL DISTRICT OF CALIFORNIA**

10

11   VINCENT DESTRA,                    )   NO. EDCV 09-01854 SS
                                        )
12                 Plaintiff,           )
                                        )
13            v.                        )   **MEMORANDUM DECISION AND ORDER**
                                        )
14   MICHAEL J. ASTRUE,                 )
     Commissioner of the Social         )
15   Security Administration,           )
                                        )
16                 Defendant.           )
     _____)
17

18                                **I.**

19                           **INTRODUCTION**

20

21        Vincent Destra ("Plaintiff") brings this action seeking to overturn

22   the decision of the Commissioner of the Social Security Administration

23   (hereinafter the "Commissioner" or the "Agency") denying his application

24   for Supplemental Security Income ("SSI").   The parties consented,

25   pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned

26   United States Magistrate Judge.   For the reasons stated below, the

27   decision of the Agency is AFFIRMED.

28

## II.

### PROCEDURAL HISTORY

On January 18, 2006, Plaintiff filed an application for SSI under Title XVI of the Social Security Act. (Administrative Record ("AR") 19).[1] Plaintiff alleged a disability onset date of October 12, 1999 on the bases of vertigo, Meniere's disease, retinal detachment, and visual loss. (Complaint Memo. at 1).[2] Plaintiff did not include a mental impairment as one of his alleged disabilities. The Agency initially denied his application on March 31, 2006, and upheld the denial on July 31, 2006. (AR 65, 70). Plaintiff then requested a hearing, which was held before Administrative Law Judge ("ALJ") Jay E. Levine on April 22,

\\

---

[1] Plaintiff's initial "Application for Disability Insurance Benefits" indicates that Plaintiff applied for benefits under Title II and Part A of Title XVIII of the Social Security Act for "Disability Insurance Benefits." (AR 97). The administrative law judge, however, adjudicated the case as an SSI case. (See AR 19). Additionally, the Agency's denial of Plaintiff's claim treats it as an SSI application. (See AR 62-72). Plaintiff also refers to his application as an SSI application. (See AR 73, 120; see also Plaintiff's Memorandum in Support of Plaintiff's Complaint ("Complaint Memo.") at 1). Regardless, the analysis of Plaintiff's claims remains the same whether governed by Title II or Title XVI: the statutes governing issues raised by Plaintiff are identical (compare 20 C.F.R. § 404.1520a with 20 C.F.R. § 416.920a). The Court will use 20 C.F.R. § 416.920a for purposes of analyzing Plaintiff's Complaint, as that statue regulates SSI claims.

[2] Plaintiff claims that he applied for SSI benefits based on these four conditions without citation to the record. However, the record reveals that Plaintiff only listed vertigo and retinal degeneration (with related vision loss) as disabling conditions. (See AR 108-109). Subsequent to his initial filing, Plaintiff submitted a correspondence in which he equated vertigo with Meniere's disease. (See AR 120).

1  2008.  (AR 39-61).  Plaintiff appeared with counsel and testified.  (AR

2  41-57).  A vocational expert ("VE") testified at the hearing.  (AR 57-

3  60).

5  On June 17, 2008, the ALJ issued a decision denying benefits.  (AR

6  18).  Plaintiff sought review of this decision before the Appeals

7  Council.  (AR 15).  On August 20, 2009, the Appeals Council denied

8  review.  (AR 5).  Plaintiff filed the instant action on March 24, 2010.

10  **III.**

11  **FACTUAL BACKGROUND**

13  Plaintiff asserts that his health problems began in 1999.  (AR 47).

14  Early visits to treating physicians indicated a vertigo diagnosis.  (See

15  AR 199-205).  In December of 2005, Plaintiff was diagnosed with

16  Vestibular Vertigo.  (AR 175).  Multiple treating physicians concluded

17  that Plaintiff did not have Meniere's Disease.  (See AR 175, 436).

18  Plaintiff was treated for various eye and vision problems, including

19  detached retina and cataracts, between May 2005 and May 2006.  (See AR

20  25).

22  On July 26, 2006, Dr. Ladapo Shyngle of IMA Evaluations, Inc.

23  performed a consultative neurologic examination of Plaintiff.  In a

24  section entitled "Mini Mental Status," Dr. Shyngle reported that

25  Plaintiff "dressed appropriately, maintained appropriate eye contact,

26  and appeared oriented to time, person, and place.  No evidence of

27  delusions or hallucinations.  No indication of recent or remote memory

28  impairment.  Mood and affect appropriate.  No suggestion of impairment

3

1  in insight or judgment." (AR 285-286). Dr. Shyngle reported no mental
2  impairments in his medical source statement. (AR 286).

3

4     On December 14, 2007, consultative examiner Dr. Robin Rhodes
5  Campbell performed a complete psychological evaluation of Plaintiff at
6  the request of the Department of Social Services. (AR 426-433). Dr.
7  Rhodes Campbell administered seven tests to evaluate Plaintiff's
8  intelligence, memory, and personality. (AR 426-433). In her report,
9  Dr. Rhodes Campbell warned that the results "should be interpreted
10 somewhat cautiously given [Plaintiff's] sporadic effort." (AR 430).

11

12    On the Wechsler Adult Intelligence test, Plaintiff scored "average"
13 and "low average". (AR 430). On the Wechsler Memory Scale, Plaintiff
14 stated that he was unable to complete one of the tasks, while scoring
15 12 out of 14 on the other. Dr. Rhodes Campbell noted that Plaintiff's
16 effort on the two Wechsler Memory Scale tasks was "very poor." (AR
17 430). On the Trail-Making test, designed to measure sustained
18 attention, visual search, and psychomotor efficiency, Plaintiff took
19 more time to complete the assigned tasks than the cutoff for impairment.
20 (AR 430-431). The results of the Test of Memory Malingering indicated
21 that Plaintiff was not malingering memory deficits; however, the Rey 15-
22 Item Memory Test, which also detects malingered memory impairments,
23 indicated that Plaintiff was malingering memory deficits. (AR 431).
24 Dr. Rhodes Campbell also administered the Minnesota Multiphasic
25 Personality Inventory, concluding only that Plaintiff's profile was
26 "valid and interpretable." (AR 431). Finally, Plaintiff took the
27 Bender Gestalt Visual Motor Test II to assess motor and perceptual
28

4

1  functioning, scoring in the 0-25 percentile range for both tests.   (AR
2  432).

3

4      In her interpretation of the results, Dr. Rhodes Campbell concluded
5  that Plaintiff was functioning intellectually in the low average range.
6  (AR 432).   In her evaluation of Plaintiff's poor memory scores, Dr.
7  Rhodes Campbell emphasized that Plaintiff's "noticeably poor effort on
8  this [test] should be considered."   (AR 432).   She further commented
9  that Plaintiff had "a tendency to exaggerate physical symptoms" and that
10 though he may have had a "genuine organic disease . . . [Plaintiff] may
11 also have [had] the need to exaggerate and complain."   (AR 432).   Dr.
12 Rhodes Campbell concluded her interpretation by stating that Plaintiff's
13 "profile [was] consistent with that of a person who may use his symptoms
14 to manipulate situations."   (AR 432).

15

16     In her medical source statement, Dr. Rhodes Campbell stated that
17 Plaintiff "should have no impairment in understanding, remembering, or
18 carrying out simple instructions."   (AR 433).   She indicated that
19 Plaintiff's ability to understand, remember and carry out detailed
20 instructions was mildly-to-moderately impaired; that he had mild-to-
21 moderate difficulty relating appropriately to the public, supervisors
22 and coworkers; that his ability to make judgments on simple work-related
23 decisions was mildly impaired; and that his ability to withstand the
24 stress and change associated with an eight-hour workday and day-to-day
25 activity was moderately-to-markedly impaired.   (AR 433).   She concluded
26 by noting that Plaintiff had "no difficulty interacting with the clinic
27 staff and [herself]."   (Id.).

28

1     Dr. Rhodes Campbell concluded her report with an evaluation of

2   Plaintiff's capability, concluding that Plaintiff "does appear to be

3   able to appropriately handle funds in his own best interest."  (AR 433).

4

5                                  **IV.**

6              **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

7

8     To qualify for disability benefits, a claimant must demonstrate a

9   medically determinable physical or mental impairment that prevents him

10  from engaging in substantial gainful activity[3] and that is expected to

11  result in death or to last for a continuous period of at least twelve

12  months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing

13  42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant

14  incapable of performing the work he previously performed and incapable

15  of performing any other substantial gainful employment that exists in

16  the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.

17  1999) (citing 42 U.S.C. § 423(d)(2)(A)).

18

19    To decide if a claimant is entitled to benefits, an ALJ conducts

20  a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

21

22        (1)  Is the claimant presently engaged in substantial gainful

23             activity?  If so, the claimant is found not disabled.

24             If not, proceed to step two.

25

26

---

27         [3]  Substantial gainful activity means work that involves doing

28  significant and productive physical or mental duties and is done for pay
    or profit.  20 C.F.R. § 416.910.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's Residual Functional Capacity ("RFC")[4], age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).

---

[4]   Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a).

The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).   When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert.   Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

### V.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 28-29).   At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 18, 2006.  (AR 21).   At step two, he found that Plaintiff had the severe impairments of vertigo and retinal deterioration.  (Id.).   He also found that Plaintiff suffered from the non-severe but medically determinable conditions of diabetes, high blood pressure (controlled with medication and no end organ damage), and a history of a disorder of the right leg and foot.  (Id.).

At step three, the ALJ found that the severe impairments at step two did not meet or medically equal a listed impairment.   (AR 22).

At step four, the ALJ found that Plaintiff was not capable of performing his past relevant work, based on the VE's testimony.   (AR

27).[5]  Based on his review of the record, the ALJ concluded that the Plaintiff had the RFC to perform "light work" and could "walk two hours out of an eight-hour work day and sit for six hours with a sit/stand option;" that he was precluded from working at unprotected heights or on dangerous machinery, from climbing, stooping, and crawling, from constant visual focus and constant reading or focus on a computer screen; and that he was limited to occasional stooping, kneeling, and crouching.  (AR 22).  The ALJ evaluated Dr. Rhodes Campbell's report, concluding that her observations "were not consistent with a disabling condition."  (AR 26).  Nonetheless, the ALJ limited Plaintiff's RFC to "entry level work that deals with things rather than people; and [has] limited interpersonal contact."  (AR 22).

At step five, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  (AR 27-28).  Specifically, the ALJ concluded that Plaintiff could perform the job requirements of a collator, a ticket taker, and a garment folder.  (AR 28).  Thus, the ALJ concluded that Plaintiff was not disabled.  (AR 28-29).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error

---

[5]  The VE's testimony indicated that Plaintiff had no relevant past work in the previous fifteen years.  (AR 57).

1  or are not supported by substantial evidence in the record as a whole.
2  <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001); <u>Smolen v.</u>
3  <u>Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).

5       "Substantial evidence is more than a scintilla, but less than a
6  preponderance." <u>Reddick</u>, 157 F.3d at 720.  It is "relevant evidence
7  which a reasonable person might accept as adequate to support a
8  conclusion." <u>Id.</u>  To determine whether substantial evidence supports
9  a finding, the court must "'consider the record as a whole, weighing
10 both evidence that supports and evidence that detracts from the
11 [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny</u>
12 <u>v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can
13 reasonably support either affirming or reversing that conclusion, the
14 court may not substitute its judgment for that of the Commissioner.
15 <u>Reddick</u>, 157 F.3d at 720-21.

17                                **VII.**

18                            **DISCUSSION**

20      Plaintiff contends the ALJ erred for five reasons: (1) the ALJ
21 failed to properly consider Dr. Rhodes Campbell's findings (Complaint
22 Memo. at 2-4); (2) the ALJ failed to properly evaluate Plaintiff's
23 mental impairment and resulting functional limitations as required by
24 20 C.F.R. § 416.920a (<u>id.</u> at 4-6); (3) the ALJ failed to properly
25 consider Plaintiff's RFC (<u>id.</u> at 6-9); (4) the ALJ failed to find
26 Plaintiff's mental impairment severe (<u>id.</u> at 9-10); and (5) the ALJ
27 failed to pose a complete hypothetical to the VE. (<u>Id.</u> at 10-13).  For

                                10

the reasons discussed below, the Court disagrees with each of Plaintiff's contentions.

**A.   The ALJ Properly Considered And Adopted The Opinion Of Consultative Physician Dr. Rhodes Campbell**

Plaintiff claims that the ALJ failed to properly consider the consultative physician's findings. (Complaint Memo. at 2-4). The Court disagrees.

Consultative physicians are nontreating sources. Implementing regulations define a "nontreating source" to mean "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.902. This term "includes an acceptable medical source who is a consultative examiner for [the Agency], when the consultative examiner is not [the claimant's] treating source." Id.

Plaintiff is correct in asserting that the uncontradicted opinion of a consultative examiner can only be rejected for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 831, 830 (9th Cir., as amended April 9, 1996). Here, however, the ALJ did not reject Dr. Rhodes Campbell's opinion, and thus was not required to provide "specific and legitimate reasons" as contended by Plaintiff. (See Complaint Memo. at 3).

11

To the contrary, the ALJ adopted Dr. Rhodes Campbell's medical assessment.  (See AR 22, 27).  Indeed, the ALJ reiterated Dr. Rhodes Campbell's warning that Plaintiff's test results should be interpreted cautiously.  (AR 26).  Based on Dr. Rhodes Campbell's conclusion, the ALJ determined that Plaintiff had no impairment in understanding, remembering, and carrying out short and simple instructions.  (AR 26). The ALJ determined that Plaintiff's ability to understand, remember, and carry out detailed instructions was mildly-to-moderately impaired.  (AR 26).  He repeated Dr. Rhodes Campbell's opinion that Plaintiff might have mild-to-moderate difficulty relating appropriately to the public, supervisors, and coworkers, and could be mildly impaired in his ability to make judgments on simple work related decisions.  (AR 26).  He also restated Dr. Rhodes Campbell's opinion that Plaintiff's ability to withstand the stress and change associated with an 8-hour workday and day-to-day activity was moderately-to-markedly impaired.  (AR 26-27). The ALJ concluded by observing that Plaintiff had no difficulty interacting with Dr. Rhodes Campbell or the clinic staff.  (AR 27).

After reviewing Dr. Rhodes Campbell's opinion, the ALJ determined that "[e]ven considering the claimant's poor efforts, the conclusions of Dr. Rhodes [Campbell] [was] not consistent with a disabling opinion." (AR at 26).  Thus, the record demonstrates that the ALJ actually adopted Dr. Rhodes Campbell's opinion and therefore was not required to provide any specific and legitimate reasons.  Moreover, the ALJ incorporated Dr. Rhodes Campbell's opinion into Plaintiff's RFC, as set forth directly below.

\\

\\

12

**B.    Due To Strong Evidence Of Malingering And Exaggeration During The
Mental Status Exam, The ALJ Properly Determined Plaintiff's RFC**

Plaintiff contends that the ALJ failed to properly evaluate
Plaintiff's RFC. (Complaint Memo. at 6-9). The Court disagrees.

Plaintiff's mental status exam revealed strong evidence that
Plaintiff was malingering during the tests. (See AR 426-433). Dr.
Rhodes Campbell noted that Plaintiff "was dramatic in his presentation
of distress. At times, he would whimper when performing even simple
tasks. He sigh[ed] heavily and grunted at times." (AR 429). Plaintiff
acted out his limitations in an inconsistent manner. Dr. Rhodes
Campbell noted that "when performing motor tasks, [Plaintiff] held his
pencil in an awkward grip producing very poor results. However, when
he was not performing an exclusive memory task, he held the pencil in
a normal grip and there is no evidence of tremor." (AR 429). Dr.
Rhodes Campbell further observed that "When presented with a simple
memory task, [Plaintiff] laughed and disbelieves[sic] and stated 'you
got to be kidding.' [Plaintiff] did not attempt the task." (AR 429).

In her report, Dr. Rhodes Campbell repeatedly warned that the
results of the tests and her conclusions should be interpreted
"cautiously given [Plaintiff's] sporadic effort." (AR 430, 432).
Plaintiff's effort on the Wechsler Memory Scale test was "very poor."
(AR 430). On one of two tests administered for memory malingering, the
results indicated that Plaintiff was malingering memory deficits. (AR
431). In her "Interpretation of Results," Dr. Rhodes Campbell
emphasized that Plaintiff's "noticeably poor" effort on the memory tests

13

should be considered in evaluating their validity. (AR 432). Similarly, Dr. Rhodes Campbell noted that Plaintiff's results on two neurological screening tests should "be interpreted cautiously given the fact that the claimant appeared to be deliberately performing poorly." (AR 432). Dr. Rhodes Campbell concluded, "[Plaintiff] has a tendency to exaggerate physical symptoms . . . . [he] may also have the need to exaggerate and complain . . . . [h]is profile is consistent with that of a person who may use his symptoms to manipulate situations." (AR 432).

Furthermore, the record reveals that Plaintiff has not been treated for mental illness. Dr. Shyngle's "Mini Mental Status" evaluation concluded that Plaintiff showed "[n]o evidence of delusions or hallucinations[,] [n]o indication of recent or remote memory impairment . . . [and] [n]o suggestion of impairment in insight or judgment." (AR 285-86). Finally, Plaintiff did not claim any mental impairments in his initial SSI application, nor did he bring up mental limitations during his April 22, 2008 hearing. (AR 39-61).

Based on this evidence, the ALJ concluded that Plaintiff could perform "light work," including the ability to "walk two hours out of an eight-hour work day and sit for six hours with a sit/stand option." (AR 22). In articulating Plaintiff's RFC, the ALJ precluded Plaintiff from working at unprotected heights or on dangerous machinery, from climbing, stooping, and crawling; and limited Plaintiff to occasional stooping, kneeling, and crouching. (AR 22). The ALJ further limited Plaintiff's RFC from work that requires constant visual focus on print materials or constant reading or focus on a computer screen. (Id.).

14

Finally, the ALJ limited Plaintiff's RFC to "entry level work that deals with things rather than people; and [has] limited interpersonal contact." (Id.).

In her medical source statement, Dr. Rhodes Campbell concluded that Plaintiff "should have no impairment in understanding, remembering, or carrying out simple instructions." (AR 433). She indicated that Plaintiff's ability to understand, remember and carry out detailed instructions is mildly-to-moderately impaired; that he has mild-to-moderate difficulty relating appropriately to the public, supervisors and coworkers; his ability to make judgments on simple work-related decisions is mildly impaired; and his ability to withstand stress and changes associated with an eight-hour workday and day-to-day activity is moderately-to-markedly impaired. (AR 433). She concluded by noting that Plaintiff had "no difficulty interacting with the clinic staff and [herself]." (AR 433).

The ALJ properly limited Plaintiff's RFC to reflect Dr. Rhodes Campbell's report, despite evidence that Plaintiff was malingering. The Plaintiff had no impairment in understanding, remembering, or carrying out simple instructions, and may have been mildly-to-moderately impaired in his ability to carry out, remember, and understand more detailed instructions. (AR 433). Dr. Rhodes Campbell also concluded that Plaintiff's ability to make work-related decisions was mildly impaired. (AR 433). The ALJ appropriately limited Plaintiff's RFC to "entry level work" to reflect these findings. (AR 22).

15

Furthermore, the ALJ limited Plaintiff to work that deals with persons rather than things and had limited interpersonal interactions, reflecting Dr. Rhodes Campbell's conclusion that Plaintiff was mildly-to-moderately impaired in his ability to interact appropriately to the public, supervisors, and coworkers.  (AR 22, 433).  Finally, by limiting Plaintiff's RFC to entry level work with limited personal interaction, the ALJ sufficiently minimized the "stress and changes associated with an eight-hour work day" that Dr. Rhodes Campbell concluded Plaintiff's ability to withstand was moderately-to-markedly impaired.  (AR 22, 433). Thus, the ALJ gave credit to Dr. Rhodes Campbell's conclusions by fully incorporating the doctor's findings into the ultimate RFC.

**C.**  **No Remand Is Required For The ALJ's Findings Regarding Plaintiff's Mental Impairment**

Plaintiff claims that the ALJ failed to properly evaluate his mental impairment as required by 20 C.F.R. § 416.920a and that the ALJ erred by failing to find Plaintiff's mental impairment severe. (Complaint Memo. at 4-6, 9-10).[6]   The Court disagrees.

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the five-step sequential evaluation process with additional regulations.[7]

---

[6]  Plaintiff lists these two issues separately - Issues II and IV, respectively.  However, because the analysis for both issues is the same, the Court will discuss them together.

[7]  These additional steps are intended to assist the ALJ in determining the severity of mental impairments at steps two and three. The mental RFC assessment used at steps four and five of the evaluation

Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-915 (9th Cir. 1998) (citing 20 C.F.R. § 416.920a) (per curiam).  When a plaintiff raises a colorable claim of mental impairment, the ALJ must follow a "special technique" to evaluate the plaintiff's limitations.  20 C.F.R. § 416.920a (2006) ("[W]e must follow a special technique at each level in the administrative review process").  The ALJ must evaluate the plaintiff's claims and incorporate the pertinent findings and conclusions into his decision.  Id. ("The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas.").  If the claimant has a medically determinable impairment, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)" for the four broad functional areas: activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation.  20 C.F.R. § 416.920a(b)(2), (c)(3).

    An ALJ's failure to follow the required procedure mandates remand only if the claimant has a "colorable claim of a mental impairment." Cf. Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2002) (holding that, where there is a colorable claim of mental impairment, the ALJ must strictly follow regulations for evaluating mental impairment); see also Selassie v. Barnhart, 203 Fed. App'x 174, 175 (9th Cir. 2006) ("[A]n ALJ's failure to follow the § 1520a technique requires reversal

_____

process, on the other hand, require a more detailed analysis.  Social Security Ruling 98-8p, 1996 WL 374184 at * 4.

1   if the claimant has a colorable claim of a mental impairment." (internal

2   quotation marks omitted)); <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1214 (11th

3   Cir. 2005) ("We thus join our sister circuits in holding that where a

4   claimant has presented a colorable claim of mental impairment, the

5   social security regulations require the ALJ to complete a PRTF and

6   append it to the decision, or incorporate its mode of analysis into his

7   findings and conclusions."); <u>but see</u> <u>Rabbers v. Commissioner Social Sec.</u>

8   <u>Admin</u>, 582 F.3d 647, 658 (6th Cir. 2009) (finding the failure to

9   strictly follow mental impairment regulations was harmless error).   A

10  colorable claim is one which is not "wholly insubstantial, immaterial,

11  or frivolous."  Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987).

12  Amendments to the Social Security regulations since <u>Gutierrez</u> have given

13  the ALJ greater discretion in deciding how to publish the mandated

14  findings, but even the amended version requires the ALJ to follow the

15  "special technique," "document application of the technique in the

16  decision," and include specific findings "as to the degree of limitation

17  in each of the functional areas."  20 C.F.R. § 416.920a(e).

18

19      Following the technique outlined in Section 416.920a(c) and (e),

20  however, is only required for medically determinable impairments.  <u>See</u>

21  20 C.F.R. § 416.920a(b).  Furthermore, the ALJ is only required to

22  determine the severity of medically determinable impairments. 20 C.F.R.

23  § 416.920a(d).   To determine whether a claimant has a medically

24  determinable impairment, the Agency must evaluate the claimant's

25  "pertinent symptoms, signs, and laboratory findings."  <u>Id.</u>

26

27      Here, the ALJ evaluated Plaintiff's "pertinent symptoms, signs, and

28  laboratory findings" - Dr. Rhodes Campbell's report - and determined

18

1  that Dr. Rhodes Campbell's conclusions were not consistent with a
2  disabling condition. (AR 26). Dr. Rhodes Campbell found no impairment
3  in Plaintiff's ability to carry out short and simple instructions and
4  only mild-to-moderate impairments in his ability to relate to the public
5  and carry out detailed instructions. (AR 433). In her only assessment
6  of Plaintiff's functional ability, Dr. Rhodes Campbell reported that
7  "[Plaintiff] <u>does</u> appear to be able to appropriately able to handle
8  funds in his own best interest." (AR 433) (emphasis added).
9
10     Although Dr. Rhodes Campbell concluded that Plaintiff has moderate-
11  to-marked difficulty withstanding the stress and change associated with
12  an eight-hour workday, this limitation is undermined by the evidence of
13  Plaintiff's malingering during the mental status exam. (AR 432-433).
14  Dr. Rhodes Campbell warned that the results of the test should be
15  interpreted cautiously. (AR 430). She further emphasized that
16  Plaintiff "may have the need to exaggerate and complain[,]" and
17  concluded that Plaintiff's "profile is consistent with that of a person
18  who may use his symptoms to manipulate situations." (AR 433).
19  Furthermore, in the only other mental assessment on record, Dr. Shyngle
20  concluded that Plaintiff exhibited no impairment in insight or judgment.
21  (AR 285-285).
22
23     Given the strong evidence of malingering and exaggeration during
24  Dr. Rhodes Campbell's examination, the ALJ did not commit error in
25  determining that Plaintiff had no medically determinable mental
26  impairment and thus was not required to follow the process outlined
27  416.920a(c) and (e) nor evaluate the severity of Plaintiff's mental
28  limitations. To the extent the ALJ's decision could constitute error,

1    this Court finds that it was harmless error because (1) the ALJ

2    incorporated Dr. Rhodes Campbell's opinion into Plaintiff's RFC and (2)

3    had the ALJ followed the Section 416.920a(c) and (e) procedures, the

4    outcome here would have been the same.  See Carmickle v. Comm'r, 533

5    F.3d 1155, 1162 (9th Cir. 2008) (if ALJ's error was inconsequential to

6    the ultimate nondisability determination, no remand required); Burch v.

7    Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will

8    not be reversed for errors that are harmless.").  Thus, to the extent

9    Plaintiff had any mental limitations, they were incorporated into

10   Plaintiff's RFC, as set forth above, and no remand is necessary.  (See

11   supra at Part VII.B.).

12

13   **D.    The ALJ Posed A Hypothetical To The VE That Reflected All**

14           **Limitations Supported By The Evidence**

15

16        Plaintiff contends that the ALJ erred by failing to include all of

17   Plaintiff's restrictions in the hypothetical presented to the VE.

18   (Complaint Memo. at 10-13).  Specifically, Plaintiff asserts that "the

19   ALJ completely ignores and does not mention the numerous impairments as

20   assessed by Dr. Rhodes Campbell in the Complete Psychological

21   Evaluation." (Id. at 11-12).  The Court disagrees.

22

23        In order for the VE's testimony to constitute substantial evidence,

24   the hypothetical question posed must "consider all of the claimant's

25   limitations." Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995).

26   However, the ALJ is not required to include limitations for which there

27   was no evidence.  See Osenbrock, 240 F.3d at 1164-65 (ALJ not bound to

28

20

1  accept as true the restrictions set forth in hypothetical if they were
2  not supported by substantial evidence).

4      The ALJ posed three hypotheticals to the VE. (AR 57-59). The ALJ
5  limited each of the hypotheticals to "entry-level work" that was limited
6  to "working primarily with things rather than people, but doesn't
7  preclude all contact with the public or fellow employees . . . . Let's
8  say limited interpersonal contact. It doesn't mean he couldn't be
9  around the public." (AR 57).

11      The ALJ's hypotheticals properly reflected Dr. Rhodes Campbell's
12  findings, and gave Plaintiff the benefit of the doubt, despite evidence
13  that Plaintiff was malingering. Plaintiff had no limitations when it
14  came to understanding, remembering, or carrying out simple instructions,
15  but may have been mildly-to-moderately impaired in his ability to carry
16  out, remember, and understand more detailed instructions. (AR 433).
17  Dr. Rhodes Campbell also concluded that Plaintiff's ability to make
18  work-related decisions was mildly impaired. (AR 433). The ALJ
19  appropriately limited his hypothetical to "entry level work" to reflect
20  these findings. (AR 22). Furthermore, the ALJ limited his hypothetical
21  to work dealing with persons rather than things and had limited
22  interpersonal interactions, reflecting Dr. Rhodes Campbell's conclusion
23  that Plaintiff was mildly-to-moderately impaired in his ability to
24  interact appropriately to the public, supervisors, and coworkers. (AR
25  22, 433). Finally, by limiting his hypothetical to entry level work
26  with limited personal interaction, the ALJ sufficiently minimized the
27  "stress and changes associated with an eight-hour work day" that Dr.
28

1   Rhodes   Campbell   concluded   Plaintiff's   ability   to   withstand   was

2   moderately-to-markedly impaired.   (AR 22, 433).

3

4        Thus, the Court concludes that the ALJ's hypotheticals sufficiently

5   included all limitations supported by the medical evidence.   Moreover,

6   Plaintiff's claim that the ALJ failed to pose a hypothetical to the VE

7   that reflected all of Plaintiff's limitations is further undermined by

8   the strong evidence of Plaintiff's malingering and exaggeration during

9   Dr. Rhodes Campbell's mental status exam, as even the limitations found

10  by Dr. Rhodes Campbell are questionable given Plaintiff's conduct.   (AR

11  426-433).

12  \\

13  \\

14  \\

15  \\

16  \\

17  \\

18  \\

19  \\

20  \\

21  \\

22  \\

23  \\

24  \\

25  \\

26  \\

27  \\

28

**VIII.**

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 15, 2010.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

_____

[8] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

23